

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMAL ELHAJ-CHEHADE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| EDUCATIONAL COMMISSION FOR | § | 3:01-CV-01301-L |
| FOREIGN MEDICAL GRADUATES, | § | |
| Defendant. | § | |

### DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS

COMES NOW **EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES ("ECFMG")**, Defendant herein, requests the following jury instructions:

Defendant contends that the Plaintiff has not properly demanded a jury and that the Plaintiff's claims are barred by the statute of limitations and *res judicata*, thus preventing Plaintiff's claims from being tried to a jury. Further, Defendant contends that the Plaintiff's 501(c) allegation are not properly tried before a jury. However, out of an abundance of caution, Defendant has prepared these requested instructions.

Additionally, Plaintiff's allegations are so unintelligible that Defendant cannot determine exactly what causes of action the Plaintiff is asserting. This makes it impossible to prepare a complete set of jury instructions. Therefore, Defendant has requested certain preliminary and cautionary instructions, as well as some damages instructions to be read to the jury. Defendant would ask for leave to prepare additional instructions should the Plaintiff's claims become more clearly presented.

## DEFENDANT'S PROPOSED INSTRUCTION NO. 1

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury, you will decided the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss this case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case – the parties, the witnesses, the attorneys and the persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

*Pattern Civ. Jury Instr.5th Cir.§1.1*

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 2**

## DEFENDANT'S PROPOSED INSTRUCTION NO. 2

Although no evidence has been presented, I instruct you that you must accept as proved these facts:

1. The ECFMG is a not-for-profit organization.

2. The ECFMG, through its program of certification, assesses the readiness of graduates of foreign medical schools to enter residency or fellowship programs in the United States that are accredited by the Accreditation Council of Graduate Medical Education.

3. ECFMG and its sponsoring organizations define a graduate of a foreign medical school as a physician who received his/her basic medical degree or qualification from a medical school located outside the United States, Canada or Puerto Rico.

4. The medical school must be listed in the *World Directory of Medical Schools*, published by the World Health Organization, at the time of the physician's graduation.

5. ECFMG certification assures directors of ACGME-accredited residency and fellowship programs, and the people of the United States, that graduates of foreign medical schools have met minimum standards of eligibility required to enter such medical residence programs.

6. ECFMG certification does not guarantee that a certificate holder will be accepted into any medical residency program since the number of applicants frequently exceeds the number of available positions.

7. The Plaintiff's reference in the style of this cause to "USMLE" is to the United States Medical Licensing Exam.

8. The USMLE is a single, 3-step examination for medical licensure in the United States.

9. The Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME) sponsor USMLE.

10. The USMLE is governed through a jointly appointed Composite Committee consisting of representatives from the FSMB, the NBME, the ECFMG and the public.

11. The USMLE is not owned by or a part of the ECFMG. The Composite Committee, of which ECFMG is a committee member only, establishes policies and procedures for the USMLE program.

12. In the United States and its territories, a license to practice medicine is a privilege granted only by the individual medical licensing authorities of the various states and other jurisdictions (i.e., District of Columbia, Puerto Rico, the Virgin Islands).

13. Each medical licensing authority sets its own rules and regulations and requires, as part of the licensing process, successful completion of the examination or other requirements demonstrating qualification for licensure.

14. There are approximately 1400 foreign medical schools throughout the world, with varying educational standards and curricula.

15. During the time period 1985 to 1989, the ECFMG administered, on average, 38,000 medical science examinations annually to students and graduates of foreign medical schools.

16. The ECFMG is not funded by or through the United States Government or by or through the State of Texas.

17. To be eligible for certification by ECFMG, graduates of foreign medical schools must: (1) pass a series of exams and (2) provide ECFMG with copies of a medical diploma that must be verified independently by the medical school to ECFMG.

18. The primary reason for independent verification of medical school completion is to assure that medical diplomas are authentic.

19. The time required to complete the certification process is based largely on the capability and commitment of individual applicants and is different for each applicant.

20. As of July 1, 1986, diploma verification became a requirement for those not yet certified by the ECFMG.

21. The testing process requires passing grades on examinations designed to assess basic medical science knowledge, clinical science knowledge and command of the English language.

22. Once the candidate passes the basic medical science and clinical science examinations within the seven-year time limit required for ECFMG certification, the basic medical science and clinical science examinations do not need to be repeated for ECFMG certification, although individual state licensing requirements may differ.

23. The English test is valid for only two years for the purpose of entry into a medical residency program.

24. If the candidate does not enter an accredited residency program in the United States by the expiration date of the English test, the English test must again be passed before the applicant is eligible to enter a residency program.

25. ECFMG verifies every medical school diploma with the appropriate officials of the foreign medical school that issued the diploma.

26. The ECFMG medical education credentials requirement is not satisfied until ECFMG receives such verification directly from the medical school.

27. To verify medical school credentials the ECFMG sends a formal request for verification to the medical school.

28. The verification of medical credentials can be a lengthy process.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 5**

29. Factors that may extend the verification process include processing time of the respective institutions; political climate in the relevant country; the nationality of the student; and the sophistication of a country's communication infrastructure, including telephone and postal conditions.

30. Additional factors that would extend the verification process, also over which the ECFMG has no control, include any strife or civil unrest in the country in which the graduate attended medical school.

31. An ECFMG Certificate does not guarantee that a "certified" applicant will be accepted into a medical residency or fellowship training program.

32. The ECFMG certificate may be one of a multitude of criteria required of an applicant for a residency or medical internship by a residency program director.

33. Each program establishes the qualifications and the levels of competency that it will accept for a residency program.

34. Each State establishes the qualifications and the level of competency that it will accept for licensure as a medical professional.

35. The ECFMG has no authority or responsibility for the admission decision of any medical residency or fellowship program.

36. Every admission decision into a medical residency program is within the sole discretion of the residency program director or person in authority at that particular institution.

37. The ECFMG has no authority or responsibility in the making of medical licensure decisions.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL**
**GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 6**

38. The individual state medical boards make medical licensure decisions in the respective United States.

39. On March 1, 1985, Chehade submitted his application to take the basic medical science, clinical science, and English examinations.

40. If an applicant fails one of the required examinations, he must submit a new application for each failed exam and again pay the respective test fee.

41. Chehade passed the English examination on his fifth attempt, on or about July 1987.

42. Chehade passed the clinical science examination on his seventh attempt, on or about July 1988.

43. Chehade passed the basic medical science examination on his eighth attempt, on or about January 1989.

44. Chehade admits that he was not entitled to an ECFMG certificate until he passed the examination requirements.

45. From the time that ECFMG sent Chehade's medical diploma to his medical school for verification in August 1986 to ECFMG's receipt of the independent verification from the Romanian medical school in July 1990, Chehade did not fulfill the medical education credential requirement for ECFMG certification.

46. ECFMG did not notify Chehade that verification of his diploma had been received until after it was received in July 1990.

47. Between 1985 and 1989, there was no correspondence from Chehade checking on the status of the verification of his medical school credentials.

48. On March 21, 1989, ECFMG notified Chehade that he passed all the examinations required for ECFMG certification, but he was not eligible for an ECFMG Certificate because he did not meet the medical credential requirements.

49. Previously, ECFMG had attempted to verify Chehade's medical diploma with his Romanian medical school in August 1986. There was no response from the medical school.

50. In certain limited circumstances, when the foreign medical school does not respond to the ECFMG's requests for verification of the medical diplomas of the medical school's graduates, ECFMG policy permits an alternate medical credential verification process.

51. In this limited group of cases, the ECFMG will consider sworn attestations from three physicians who were fellow students or faculty members at the candidate's medical school, or who had other personal knowledge that the candidate attended the specified medical school and graduated with a Doctor of Medicine or equivalent medical degree.

52. The physicians making the sworn attestations must hold active unrestricted licenses to practice medicine in a state in the United States and must include their state license numbers in the sworn attestation.

53. The ECFMG reviews each attestation to confirm the attesting physician has personal knowledge of the candidate's graduation from medical school.

54. The ECFMG also verifies the license of the attesting physician with his or her medical licensing board.

55. ECFMG records reflect that it sent to Chehade the attestation forms in November 1987 and in June 1989.

56. Chehade never returned the attestation forms to ECFMG.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 8**

57. On April 21, 1989, ECFMG sent another request for verification to Chehade's medical school in Romania.

58. ECFMG received no response from Chehade's medical school to this verification inquiry.

59. In June 1989, ECFMG advised Chehade of an alternate method to send verification requests to the medical schools in Romania made at the request of the U.S. Embassy in Romania.

60. The U.S. Embassy would act as a conduit in facilitating ECFMG's verification with the medical schools in Romania of the medical diplomas of graduates who were not citizens of Romania.

61. The ECFMG would send the verification requests along with the requisite fees to the U.S. Embassy for forwarding to the medical schools in Romania.

62. The U.S. Embassy would then forward the verification requirements to the medical schools.

63. In August 1989, the ECFMG sent a verification request to the U.S. Embassy for six candidates, including Chehade, who had attended three different medical schools in Romania.

64. By letter dated August 24, 1989, the ECFMG told Chehade that in order to expedite the verification process, Chehade should contact the U.S. Embassy in Bucharest, Romania or his medical school in Romania.

65. Chehade's medical school in Romania verified his diploma to the ECFMG in July 1990.

66. By letter undated, received by ECFMG on April 17, 1990, Chehade accused the ECFMG of discrimination. The letter further criticizes the ECFMG for failure to complete the independent verification of his medical school graduation and stated "[t]he ECFMG credential department should realize the harm done to me by their attitude of 'indifference or I don't give a damn' toward me and probably toward others."

67. In response to Chehade's complaint that he could find no qualified doctors to verify his medical diploma, on May 17, 1990, ECFMG provided Chehade with the names and addresses of three individuals who attended medical school in Romania and who were licensed to practice medicine in the United States.

68. ECFMG requested that Chehade contact ECFMG if he was experiencing difficulty in obtaining the three attestations.

69. From March 1990 to September 1990, Chehade wrote several "complaint" letters to U.S. Senator Phil Gramm, the *Dallas Morning News*, and U.S. Congressman John Bryant criticizing ECFMG's credential verification process.

70. Chehade stated in the letter to Senator Gramm, "I already lost one year and if I don't receive the certificate by April 1990 I will loose [sic] another year."

71. In his letter to the *Dallas Morning News* in May 1990, Chehade stated "...to date the ECFMG is playing games and mishandling the situation" "While I lost 2 years so far waiting and because I have to apply one year in advance for the residecy [sic] in hospitals, I already wasted 3 years as a result of their mishandling the situation" "I feel I was discriminate [sic] against by the ECFMG..." "I really don't like to sue and waste more time." "I still cannot find any reason whatsoever for their negligent manner which not only discriminate against me but also resulted in costing me heavily in time, money and loosing [sic] many opportunities I might not get in the future. It also delays my licensure procedure."

72. In a follow-up letter to the *Dallas Morning News* in July 1990, Chehade states "I have the feeling that the ECFMG is waging Psychological and economical warfare against me-I was also defamated [sic] as a result and I am paying a heavy price due to its incompetence, negligence and red

tape." "Nowadays, I am really considering a law suit against the ECFMG…I am currently seeking the lawyer that a medical Board cannot buy."

73. In his letter to Congressman John Bryant, received by ECFMG on October 1, 1990, Chehade states "[t]he ECFMG has committed a crime against my medical career and if the ECFMG cannot do the job.they [sic] (ECFMG) must be dismissed from their assignement [sic]."

74. The United States Department of State contacted Chehade twice in July 1990 confirming receipt of his complaints regarding verification and "regretting the delay" caused in his case.

75. The United States Department of State informed Chehade that "applications for such documents from Romania, even when made through the Embassy, often involve a considerable delay in the response of the Romanian authorities."

76. In July 1990, ECFMG received verification of Chehade's medical diploma from his medical school in Romania through the United States Embassy.

77. From that date, ECFMG had all documentation necessary to issue to Chehade a Standard ECFMG Certificate.

78. From that date, Chehade could inform any residency program director that he had fulfilled the requirements for a Standard ECFMG Certificate.

79. The "Letter of Certification" issued to Chehade served as confirmation that he was certified by ECFMG and allowed him to apply for residency programs pending the printing of the actual Standard ECFMG Certificate.

80. Once an applicant has been certified by ECFMG, the role of ECFMG is limited.

81. Upon request by a residency program, ECFMG will verify an applicant's ECFMG certification to an inquiring residency training program director.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL**
**GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 11**

82. The ECFMG does not initiate communication with any residency program about a holder of an ECFMG certificate unless requested to do so by the applicant.

83. For example, in calendar year 1997, the ECFMG's certification verification service processed over 63,000 requests from hospitals, credentialing agencies, state medical boards and residency program directors seeking to confirm the ECFMG certification status of graduates of foreign medical schools.

84. The Standard ECFMG certificate contains the applicant's name, ECFMG number, dates he/she passed the basic medical science, clinical science and English examination, and the date issued.

85. The standard certificate will show the date of expiration of the English examination for the purpose of entry into a medical residency program.

86. To re-validate the English test, the English exam must be repeated every two years until a candidate has been admitted into a medical residency program.

87. Once re-validated, a validation sticker is placed on the certificate reflecting current status.

88. Before 1995, the ECFMG required an applicant to return his original certificate and ECFMG would affix the re-validation sticker.

89. In 1995, the ECFMG changed its procedure to forward the re-validation sticker directly to the applicant.

90. Other than the referenced statistical information, there are no other "codes" or special qualities of an ECFMG certificate that would provide any "hidden" or adverse information about an applicant to a medical residency program in the possession of an applicant's ECFMG certificate.

91. The ECFMG maintains up to date records of all candidates' ECFMG history.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL**
**GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 12**

92. The ECFMG records reflect the most current English test validity date for the purpose of entry into a residency program, even if a candidate's Standard ECFMG certificate itself does not reflect the most current dates.

93. At the time the "Letter of Certification" was issued to Chehade on August 7, 1990, the correct validity date of his English test for the purpose of entry into a residency program was July 1990.

94. This apparent date discrepancy resulted because the results of the ECFMG English test Chehade had taken on July 18, 1990, were not yet available.

95. The passing result of Chehade's July 18, 1990, ECFMG English test was reported to him on September 12, 1990.

96. The most recent English test date on the Standard ECFMG Certificate issued to Chehade on October 31, 1990, should have been updated to include the results of his July 1990, English test pass to show as valid for entry into a residency program through July 1992.

97. The original ECFMG standard certificate sent to Chehade showed an English test "valid through" date of July 1990.

98. If Chehade had contacted the ECFMG to have the English test dates on his ECFMG Certificate updated, he would have been requested to return the Standard Certificate so that a re-validation sticker could be affixed.

99. If, at that time, a residency program director had contacted the ECFMG to verify Chehade's certification status, the program director would have been advised that the English test was valid through July 1992 for the purpose of entry into a residency program.

100.    ECFMG has no record of any inquiry from any residency training program concerning Chehade or Chehade's ECFMG Certificate.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL
GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 13**

101.   Chehade never returned his original ECFMG Certificate for validation of his July 1990 English examination.

102.   The ECFMG plays no part in the establishment of admission criteria requirements by individual residency programs.

103.   A medical residency program is free to accept candidates with particular skills, it may limit the number of times an applicant has taken the ECFMG tests, or it may establish a minimum score threshold on the ECFMG examinations for admission to its program.

104.   Just because a "passing score" for the ECFMG certificate in the basic medical science and clinical science examinations is 75 does not mean that a medical residency program must accept that score as its admission criteria.

105.   ECFMG has no knowledge or information about any application that Chehade may have sent to any medical residency program.

106.   ECFMG did not participate in the decision making process of any residency training program that received an application for admission from Chehade.

107.   Chehade originally entered the United States in 1984 to visit family.

108.   Due to civil war in Lebanon, Chehade was allowed to remain in the United States under a Temporary Protective Status program with a temporary immigration Visa.

109.   Chehade had to renew his temporary Visa every six months.

110.   Chehade left the country in July 1993 when the United States did not renew his Visa.

111.   From July 1993 to September 1996, Chehade lived in Lebanon.

112.   Chehade returned to the United States under a permanent resident status in September 1996.

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 14**

113.   Between 1994 and 1997, Chehade let the validity of his ECFMG English test lapse for the purpose of entry into a medical residency program.

114.   Without a current passing grade on the English examination, Chehade was ineligible for entry into an accredited residency program.

115.   In March 1997, Chehade took and passed the ECFMG English examination.

116.   Although not required to take two tests, in January 1997, Chehade also took the TOEFL (Test of English as a Foreign Language) exam.

117.   Chehade directed the results of the TOEFL exam to the ECFMG.

118.   The ECFMG received a score report from TOEFL on March 18, 1997 showing that Chehade had taken the January 1997 TOEFL and had passed the English requirement to re-validate his ECFMG certificate.

119.   Chehade requested a revalidation sticker from the ECFMG by letter received by the ECFMG on March 24, 1997.

120.   A re-validation sticker was sent to Chehade on March 24, 1997. Chehade's ECFMG English test would now be valid through January 1999 for the purpose of entry into a medical residency program.

121.   Chehade claims that he applied to residency programs all over the United States.

122.   In 1997 alone, Chehade claims that he applied for over 1000 medical residency positions across the United States.

123.   Chehade was not offered one position for a medical residency or internship program.

124.   ECFMG did not promise Chehade that it would assist him in obtaining admission into any medical residency program.

125.    ECFMG did not guarantee Chehade's admission into a residency program.

126.    ECFMG did not promise to verify Chehade's foreign medical diploma within a certain period of time.

127.    Chehade admits that the ECFMG did not guarantee him a job.

128.    ECFMG did not enter into a contract with Chehade in which it agreed to assist Chehade in obtaining admission into a medical residency program.

129.    ECFMG did not enter into a contract with Chehade in which it guaranteed Chehade's admission into a residency training program.

130.    ECFMG did not enter into a contract with Chehade in which it agreed to verify his foreign medical diploma within a certain period of time.

131.    ECFMG did not publish or send any adverse of defamatory correspondence concerning Chehade to any third party.

132.    ECFMG did not conspire with any person or entity to inflict a wrong or injury to Chehade.

133.    Chehade admits he has no documents to prove collusion between the ECFMG and a third party.

134.    Chehade was never an employee of ECFMG.

135.    Chehade did not seek employment with ECFMG.

136.    The ECFMG is authorized by the United States Information Agency (USIA) to sponsor foreign national physicians as Exchange Visitors in the United States.

137.    Participation is designated by Visa sponsorship category of either J-1 Alien Physician (ACGME accredited programs) or J-1 Research Scholar (research programs).

138.   To be eligible for the J-1 Alien Physician Visa for entry into an ACGME accredited program, a candidate must:  (i) complete ECFMG certification,  (ii) have a fully executed contract for entry into a residency program and  (iii) agree to return to his home country for some stated time to practice medicine at the end of his medical training.

139.   If Chehade was never accepted into a residency program, he would not have been eligible for the J-1 Visa status.

140.   The ECFMG has no control over the number of residency positions offered to potential J-1 Visa holders.

141.   The ECFMG has no control over the number of residency positions offered to ECFMG Standard Certificate holders, of which Chehade was one.

142.   The type of residency program, the number of foreign medical graduates admitted, the threshold requirements for admission, and the caliber of medical student sought were all within the exclusive control and responsibility of the individual residency training program.

*Pattern Civ. Jury Instr. 5th Cir. §2.4*

## <u>DEFENDANT'S PROPOSED INSTRUCTION NO. 3</u>

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

*Pattern Civ. Jury Instr. 5th Cir.§2.11*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 4

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.

*Pattern Civ. Jury Instr. 5th Cir. §2.12*

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 19**

## DEFENDANT'S PROPOSED INSTRUCTION NO. 5

Do not let bias, prejudice or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

*Pattern Civ. Jury Instr.5th Cir.§2.13*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 6

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

*Pattern Civ. Jury Instr.5th Cir.§2.14*

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 21**

## DEFENDANT'S PROPOSED INSTRUCTION NO. 7

In determining the weight to be given to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something or failed to say or do something that was different from the testimony he gave at the trial.

*Pattern Civ. Jury Instr. 5th Cir. §2.16*

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 22**

## DEFENDANT'S PROPOSED INSTRUCTION NO. 8

You must consider only the evidence in this case.  However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

*Pattern Civ. Jury Instr. 5th Cir. §2.18*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 9

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – she is called an expert witness – is permitted to state her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

*Pattern Civ. Jury Instr.5th Cir.§2.19*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 10

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

*Pattern Civ. Jury Instr.5[th] Cir.§2.20*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 11

You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.

*Pattern Civ. Jury Instr. 5th Cir. §2.22*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 12

If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled.  You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.  It is your task first to decide whether the defendant is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

*Pattern Civ. Jury Instr. 5th Cir. §15.1*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 13

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole – that is, to compensate the plaintiff for the damage that the plaintiff has suffered.

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

*Pattern Civ. Jury Instr. 5th Cir. §15.2*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 14

A. Damages Accrued

If you find for the plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

B. Calculation of Future Damages

If you find that the plaintiff is reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.

C. Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that plaintiff will not actually suffer until some future date. If you should find that the plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages.

If you award damages for loss of future earnings, you must consider two particular factors:

1. You should reduce any award by the amount of the expenses that the plaintiff would have incurred in making those earnings.

2. If you make an award for future loss of earnings, you must reduce it to present value by considering the interest that the plaintiff could earn on the amount of the award if he makes a relatively risk-free investment. The reason why you must take this reduction is because an award of an amount representing future loss of earnings is more valuable to the plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date he would have earned the money. Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiff can earn on that amount in the future.

If you make any award for future medical expenses, you should adjust or discount the award to present value in the same manner as with loss of future earnings.

However, you must not make any adjustment to present value for any damages you may award for future pain and suffering or future mental anguish.

*Pattern Civ. Jury Instr. 5th Cir. §15.3*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 15

You may award damages for any bodily injury that the plaintiff sustained and any pain and suffering that the plaintiff experienced in the past or will experience in the future as a result of the bodily injury. No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need by introduced. You are not trying to determine value, but an amount that will fairly compensate the plaintiff for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in the light of the evidence.

*Pattern Civ. Jury Instr. 5th Cir. §15.4*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 16

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate – to avoid or minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recover of those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant ha the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

*Pattern Civ. Jury Instr. 5th Cir. §15.15*

## DEFENDANT'S PROPOSED INSTRUCTION NO. 17

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called the, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

There are two types of evidence you may consider in properly finding the truth as to the

facts in the case. Once is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

*Pattern Civ. Jury Instr. 5th Cir. §3.1*

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' REQUESTED JURY INSTRUCTIONS – Page 33**

Respectfully submitted,

HENSLEE, FOWLER, HEPWORTH
& SCHWARTZ, P.L.L.C.

By: _____
      Mark C. Roberts II
      State Bar No.  00788293

6688 North Central Expressway
Suite 850
Dallas, Texas  75206-3913
(214) 219-8833
(214) 219-8866 - Facsimile

ATTORNEYS FOR DEFENDANT
EDUCATIONAL COMMISSION FOR FOREIGN
MEDICAL GRADUATES

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 12th day of August 2002, a true and correct copy of the above and foregoing document was served upon the following counsel of record in accordance with the Texas Rules of Civil Procedure.

Jamal Elhaj-Chehade        *Certified Mail, Return Receipt:*  7002 0510 0004 4353 3737
5414 Cedar Springs, #806
Dallas, TX  75235

_____
Mark C. Roberts II

K:\35200\02\pldgs\jury-instructions.doc